ERNEST N. SMITH *vs.* RETTA BARCLAY *et al.*

(Argued June 7, 1893.   Affirmed June 29, 1893.)

## Claim of Third Person to Money Garnished.

Where the money or property in the hands of a garnishee is claimed by a person not a party to the action, the mode of procedure is governed by 1878 G. S. ch. 66, § 174, and not by section 175.

## Such Claimant Holds the Affirmative and should First Plead.

The affirmative in maintaining his right to the property is on the claimant, who must serve the first pleading in the nature of a complaint, setting up his claim, to which the plaintiff may answer.

## Pleading and Proof in Such Intervention.

Under a simple issue of ownership the plaintiff may prove any facts tending to impeach the validity, as to him as creditor, of any transfer of the property from the defendant to the claimant; and it is not necessary in such a case for the plaintiff, in his answer to the claimant's complaint, to allege, what has been already alleged or appears in the action, that he is a creditor of the defendant, and has attached the property by garnishment.

## Jury Trial Waived by Conduct Amounting to Waiver.

The conduct of the claimant on the trial of this action *held* to have amounted to a waiver of the right to a jury trial, if any such right existed.

Appeal by claimants, Retta Barclay and Fred L. Barclay, from an order of the District Court of Otter Tail County, *L. L. Baxter,* J., made January 3, 1893, denying their motion for a new trial.

Lafayette H. Smith and Henry H. Rice recovered a judgment October 5, 1876, against William H. Barclay in Cook County Circuit Court, Illinois.   It was revived by *scire facias* in that court on November 6, 1885.   Rice soon after sold and duly assigned to Smith his interest in the judgment.   On July 29, 1891, Smith died intestate at Chicago, Ill., and plaintiff was there appointed administrator of his estate.   A copy of his letters of administration was filed in the Probate Court in Clay County, and this action commenced there upon the Illinois judgment; but, on demand, the venue was changed to Otter Tail County, as defendant then resided at Fergus Falls. The First National Bank of Fergus Falls was on August 5, 1891, garnished, as having money on deposit belonging 'to William H.

Barclay. Its cashier appeared and denied any indebtedness to him, and, on leave obtained, plaintiff served a supplemental complaint making the bank and Barclay's wife, Retta, and minor son, Fred L., parties, as they claimed the $5,500 which Barclay had deposited in the bank. Meantime the defendant William H. Barclay made default, and judgment was entered against him February 19, 1892, for $3,516.97, the amount of the Illinois judgment, with interest and costs.

After the disclosure of the garnishee, denying any indebtedness to William H. Barclay, the plaintiff, Ernest N. Smith, made a motion under 1878 G. S. ch. 66, § 175, for leave to file a supplemental complaint against the garnishee, and by it asked nothing more. On the hearing the court granted the motion, and also directed that the claimants, Retta Barclay and Fred L. Barclay, be brought in and made parties defendant in the proceedings, and that the supplemental complaint be made and filed against them, as well as against the garnishee, and that they have twenty days in which to answer it. This supplemental complaint stated on information and belief that the garnishee had not made a true disclosure. That it had money in its possession belonging to William H. Barclay. That from June 1, 1890, to April 25, 1891, he was a co-partner with George A. Forrester at Moorhead under the firm name of Red River Milling Co. That on the last named day Barclay sold his interest in the firm to his partner for $11,500, which sum Barclay immediately deposited in the bank in the name, and to the credit, of his wife, Retta Barclay. That of this money $5,503 was in the First National Bank of Fergus Falls when the garnishee summons was served on it. That for the purpose of concealing the money from his creditors, William H. Barclay, after removing to Otter Tail County, did business there under the name of Barclay Manufacturing Co., and claimed that his wife, Retta, and his minor son, Fred L., composed the firm doing business under that name, and that he was their agent, but had no actual interest therein. That the money in the hands of the garnishee was transferred on its books to the credit of this company, and was fraudulently claimed by the wife and son. By this supplemental complaint, the plaintiff asked that the bank be charged as garnishee to the amount of his judgment against William H. Barclay.

The bank, by its answer, admitted that it had the money to the credit of the Barclay Manufacturing Co., and brought it into court to be paid over to such person or party as the court should direct, and prayed to be discharged with costs and reasonable counsel fees and disbursements.

Retta Barclay and Fred L. Barclay appeared, and by answer alleged that they were the persons doing business under the firm name Barclay Manufacturing Co., and owned the money standing to its credit in the bank, and denied the other allegations in the supplemental complaint. These issues were so framed under the order made on plaintiff's application to file a supplemental complaint against the bank. 1878 G. S. ch. 66, § 175.

The issues were first tried in November, 1891. The jury then found that Retta Barclay was the owner of the money in the bank. The plaintiff appealed, and a new trial was granted. *Smith* v. *Barclay,* 49 Minn. 365. The issues were again tried November 21, 1892. A jury was impaneled for the trial of special issues only, but no special issues were framed. After the evidence was all submitted, the claimants, Retta Barclay and Fred L. Barclay, asked the judge to submit to the jury two questions.

"1st. Was Retta Barclay a member of the Red River Milling Company?

"2nd. Was the money paid by Forrester to the retiring partner, at the time of dissolution, the property of Retta Barclay?"

The Judge refused to submit these questions to the jury, and the claimants excepted. No other question for the jury was proposed. Whereupon the plaintiff moved that findings be made by the court that the allegations of the supplemental complaint are true, and ordering judgment for plaintiff. He asked this on the ground that there was no evidence to support a verdict or finding that the claimant Retta Barclay was the partner with Forrester in the Red River Milling Co., or that the claimants, or either of them, owned the money garnished. This motion was granted and the claimants excepted, moved for a new trial, and, being denied, appeal.

*Mason & Hilton,* for appellants.

The real contest involves the question whether the defendant William H. Barclay, or his wife, the claimant Retta Barclay, was

the real owner of the funds garnished.   These funds are a part of
the profits of a copartnership business carried on at Moorhead
under the name of the Red River Milling Company.   There were
but two members in that copartnership.   One of them was George
A. Forrester.   The plaintiff claims that the defendant William
H. Barclay was the other.   Appellants claim that Retta Barclay
was the other partner, and that the money garnished belonged to
her.

When the case was called for trial, and before any testimony had
been given, appellants moved the court for judgment on the plead-
ings, on the ground that the supplemental complaint did not state
facts sufficient to constitute a cause of action.   As far as these
claimants are concerned, the supplemental complaint and their
answer thereto are the pleadings in the case, and are the plead-
ings upon which the motion was made.   The supplemental com-
plaint states no cause of action against these appellants, Retta and
Fred L. Barclay.   It contains an allegation of a fraudulent trans-
fer of property by William H. Barclay to defraud his creditors.
If this were admitted to be true, then, before the plaintiff can com-
plain, he must show that he was a creditor of William H. Barclay
at the time of such fraudulent transfer.   There is no such allega-
tion in the supplemental complaint.   It nowhere appears that
William H. Barclay was then a debtor to the plaintiff.   There can
be no fraud upon creditors without creditors to be defrauded.   *Bra-
ley* v. *Byrnes,* 20 Minn. 435, (Gil. 389;)' *Hines* v. *Chambers,* 29 Minn.
7; *Zimmerman* v. *Lamb,* 7 Minn. 421, (Gil. 336;) *Bruggerman* v.
*Hoerr,* 7 Minn. 337, (Gil. 264;) *Fullington* v. *Northwestern I. & B.
Ass'n,* 48 Minn. 490.

The claimants being served with a supplemental complaint under
order of the court, such complaint must state a cause of action
against them; if it fails so to do, they may take advantage of it.
Nor is it material how appellants were brought into court.   This
supplemental complaint states plaintiff's cause of action against
them.   That is the pleading they had to answer, and if it failed to
state a cause of action, their motion for judgment on the pleadings
should have been sustained.   *Penfield* v. *Wheeler,* 27 Minn. 358;
*Zimmerman* v. *Morrow,* 28 Minn. 367.

In deciding this case on the former appeal, this court said: "If Mrs. Barclay was really the copartner of Forrester, the money belonged to her, and the plaintiff had no right respecting the same. If the husband was the copartner, the profits thus received belonged to him, and were subject to garnishment by the plaintiff, standing in the place of a creditor of the husband." 49 Minn. 365. The question, who was the partner with Forrester in the Red River Milling Company, was the sole question litigated in this case. The determination of that question depended upon certain facts, and facts alone. All evidence was directed to that one point. The testimony was very conflicting. This made it particularly a question for the determination of a jury.

*John E. Greene, Mahnken & Greene,* and *Wm. T. Blair,* for respondent.

Upon the trial a jury was called by the court solely for the trial of such special issues as the court might see fit to submit to them. After the evidence was in, the Judge refused to submit any of the issues to the jury and himself made and filed findings of fact and conclusions of law.

The claimants contend that, as far as they are concerned, the supplemental complaint and their answer thereto are the only pleadings in the case, and that such supplemental complaint states no cause of action against them, because it contains no allegation that the plaintiff was a creditor of the defendant Wm. H. Barclay, at the time the latter is charged to have fraudulently transferred the funds in question to his wife, the defendant Retta Barclay. A supplemental complaint does not supersede the original complaint; but both stand, and together constitute the complaint in the cause. Such seems to have been the holding of this court, and there can be no question that it is the general rule as to such pleadings. *Lowry* v. *Harris,* 12 Minn. 255, (Gil. 166;). *Wayne Pike Co.* v. *Hammons,* 129 Ind. 368.

The original complaint states facts showing defendant Wm. H. Barclay a debtor since 1877, and these two pleadings meet fully the objection.

The plaintiff, on motion, asked leave to file and serve a supplemental complaint against the defendant Wm. H. Barclay and the

garnishee. The court, upon hearing that motion, ordered that the claimants be brought in as parties defendant, and directed that the supplemental complaint be served upon them also, and fixed the time for them to answer to it. They were served accordingly. It is quite possible that the proceedings had were insufficient to compel them to appear, or suffer for their failure to do so. It was optional with them to appear or not. If the supplemental complaint stated no cause for action against them, or if the proceedings taken to bring them in were irregular, they had a perfect right to take advantage of it, but that advantage should have been taken in the manner prescribed in *Penfield* v. *Wheeler*, 27 Minn. 358. But, waiving all irregularities, they came into this action of their free will, and submitted themselves to the jurisdiction of the District Court as defendants therein.

The issue was one to be tried by the court. 1878 G. S. ch. 66, §§ 216, 217. On the trial a jury was impaneled by the court for the trial of special issues only. Up to the close of the evidence, the court had not determined what issues, if any, it would submit to the jury, and had not been requested by either party to submit any particular question to them. Neither party had a right to demand a jury; they had not agreed to submit anything to a jury, and in refusing to grant the request of appellants to submit their two questions, and in granting plaintiff's motion, the court was not withdrawing from the jury anything they had any absolute right to decide; but, on the contrary, the court was simply exercising the right given it by 1878 G. S. ch. 66, § 217, to submit or not to submit the case, or any part thereof, to the jury.

The court was justified in its rulings, under the rule that a trial court may properly direct a verdict or order judgment for a party, when it would obviously be its duty to set aside a verdict against him. *Dawson* v. *Helmes*, 30 Minn. 107; *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482; *Giermann* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 5.

MITCHELL, J. It having appeared that the money attached in the hands of the garnishee was claimed by Retta Barclay and Fred L. Barclay, the wife and son of the defendant William H. Barclay, the court ordered that they be brought in and made par-

ties defendant to the action, and that plaintiff have leave to serve a "supplemental complaint" against them and the garnishee. The plaintiff thereupon served such a complaint, the substance of which was that the garnishee had in its possession a certain sum of money belonging to William H. Barclay, but which he had deposited in the name of his wife and son, for the purpose of defrauding his creditors, and putting it beyond their reach. The garnishee answered, admitting that it had the money, and averring a willingness to pay it over to whomsoever the court should decide was entitled to it.

Retta and Fred L. Barclay also answered, denying the material allegations of the supplemental complaint, and alleging generally that the money in the possession of the garnishee belonged to them.

When the case came on for trial of this issue the defendants (Retta and Fred L. Barclay) first moved for judgment on the pleadings, and then objected to the reception of any evidence, on the ground that the "supplemental complaint" did not state a cause of action against them. The motion and objection were both overruled, and the correctness of this ruling presents the first question on this appeal.

The particular ground of the objection to the complaint proceeds upon the theory that the proceedings were in the nature of an action to set aside the transfer of this money by the judgment debtor, William H. Barclay, to his wife and son, as being in fraud of his creditors, and therefore that the complaint was defective in not alleging that plaintiff was a creditor of William H. Barclay at the time of such alleged fraudulent transfer.

Some confusion has arisen out of the informal practice adopted by counsel, apparently acting under a mistaken idea that the mode of procedure prescribed by 1878 G. S. ch. 66, § 175, applies to a case where some third person, not a party to the action, claims the money or property in the hands of the garnishee. But it will be readily seen that the provisions of that section have reference only to cases where the garnishee himself does not answer truthfully, or where he himself claims title to the money or property by conveyance or transfer that is void as to the creditors of the defendant, and consequently that the supplemental complaint provided for is one against the garnishee only in order to charge him. Cases where

the funds or property in the hands of the garnishee are claimed by some one else are provided for and governed by section 174 of the same chapter. It provides that such claimant may, on his own application, be permitted to appear in the action, and *maintain his right;* and if he does not voluntarily appear notice may be given him to appear, or be barred of his claim.

The provision of the statute are not full or explicit as to the mode of procedure, but it is very clear that they do not contemplate the serving of any pleading by the plaintiff in the first instance against the claimant. All that is provided for is the service upon him of a notice to appear and maintain his right. The affirmative in maintaining this right is on him, and it is his place to serve the first pleading in the nature of a complaint in intervention, setting up his claim, to which, if necessary, the plaintiff may answer. *Donnelly* v. *O'Connor*, 22 Minn. 309; *North Star Boot & Shoe Co.* v. *Ladd*, 32 Minn. 381, (20 N. W. Rep. 334.) See, also, *McMahon* v. *Merrick*, 33 Minn. 262, (22 N. W. Rep. 543.)

In this case counsel have just reversed the natural and proper order of pleading. The "answer" of the claimants, which should have been the first pleading, and more properly called a complaint, amounts to a mere general allegation of ownership, without indicating the source of title, while the "complaint" of plaintiff, which ought to have been an answer, amounts, in effect, to a denial of this, and an allegation that the money is the property of the original defendant, but deposited by him in the bank in the name of the claimants merely for the purpose of putting it beyond the reach of his creditors.

Under such simple issue of ownership we think a plaintiff may prove any facts tending to impeach the validity, as to him as a creditor, of any transfer of the attached property from the original defendant to the claimant; and, without deciding what he may be required to prove on the trial, we are of opinion that he is not required to allege in his answer to the claimant's complaint, what is already alleged in his own complaint, or appears in the proceedings in the action, that he is a creditor of the defendant, and has attached the property by garnishment. The very notice to the claimant to appear and maintain his right to the garnished property

implies and presupposes this. We think that it has never been the practice for the plaintiff to make any such allegations in his answer to the claimant's complaint, and that to hold it necessary would be a surprise to the profession.

2. When the case was called for trial "a jury was impaneled by the court for the trial of special issues only." This appears to have been done by the court on its own motion, but without objection by either party. No special issues or specific questions of fact were framed by the court, or suggested by counsel. After the evidence closed, the claimants asked the court to submit three specific questions of fact to the jury. This the court refused to do, and discharged the jury, and proceeded to make findings of fact and conclusions of law as on trial of a cause by the court. It is assigned as error that the claimants were thus improperly denied the right of trial by jury.

It is not necessary to decide whether they were entitled as a matter of right to a jury trial, for, if they were, we are clearly of opinion that what occurred on the trial amounted to a waiver.

At the commencement of the trial the court evidently proceeded upon the theory that it was a "court case," but in which the court might, in its discretion, order some specific questions of fact to be tried by a jury. To this view of the matter the claimants assented by not objecting, and, after the evidence closed, they themselves proceeded on this same view in asking that certain specific questions of fact be submitted to the jury. Having themselves acted on this theory of the law, and allowed the court to do so without objection, they cannot now be heard to assert, what they never asserted in the court below, that it was a "jury case," and that they were entitled to a jury trial as a matter of right.

It can hardly be necessary to add that, if the case was triable by the court, if, from the developments on the trial, the judge changed his mind, and concluded that it was inexpedient to submit any specific questions to a jury, there was no error in discharging the jury and trying the case himself.

Order affirmed.

(Opinion published 55 N. W. Rep. 827.)